IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID JOHN KAISER,
       Plaintiff,

v.                                           Case No. 3:07cv229/LAC/EMT

M. SHIPMAN, SENIOR CHAPLAIN,
       Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* Plaintiff David John Kaiser ("Kaiser"), an inmate who proceeds pro se, sues Defendant M. Shipman ("Shipman"), formerly the senior chaplain at a Florida Department of Corrections ("FDOC") facility at which Kaiser was incarcerated. Kaiser asserts that Shipman refused to permit him to possess or use certain religious items required for the practice of his faith, thereby violating Kaiser's rights under the First and Fourteenth Amendments as well as RLUIPA. Presently before the court is Shipman's Amended Special Report, treated as a motion for summary judgment (Docs. 53, 62), to which Kaiser has responded in opposition (Docs. 59, 63). Upon review of the parties' submissions, for the reasons stated below the court recommends that the motion for summary judgment be granted.

I.      PROCEDURAL HISTORY

Kaiser initiated this action by filing a complaint on May 25, 2007 (Doc. 1, received for docketing May 31, 2007).[1] The case was referred to the undersigned for the issuance of all

_____

[1] In his initial complaint Kaiser named two additional Defendants, Century Correctional Institution Warden Charles Halley and Chaplain Administrator Alex Taylor. Kaiser did not name these Defendants in the Second Amended Complaint or subsequent amended complaints, however, and they were not served with process. Although the parties and the court have identified the style of this case as "Kaiser v. Shipman" in numerous documents, the electronic docket

preliminary orders and any recommendations to the district court regarding dispositive actions.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  Pursuant to this authority, and following Kaiser's paying the filing fee in full and submitting his First Amended Complaint, by order dated September 19, 2007, the court directed service of the Second Amended Complaint on Shipman.[2]  As directed by the court, Shipman filed a Special Report (Doc. 29).   In response to the Special Report, Kaiser requested permission to file a Third Amended Complaint.  On March 5, 2008, the court denied Kaiser's motion, although it granted him leave to file a Fourth Amended Complaint that was "identical to his Second Amended Complaint in all respects" with one exception:  it could include a demand for nominal damages (Doc. 39 at 5).  Upon being served with the Fourth Amended Complaint, Shipman filed an Amended Special Report (Doc. 53), to which Kaiser responded (Doc. 59).

As Shipman submits in his Amended Special Report, Kaiser's Fourth Amended Complaint is not fully compliant with the court's instructions regarding amendment.  Rather than filing a complaint virtually identical to the Second Amended Complaint, as instructed, in amending Plaintiff added certain unauthorized allegations (*see* Doc. 40, nn. 1 and 2, at 6 and 9, respectively).  Kaiser also eliminated his demand for injunctive and declaratory relief—leaving nominal damages as the sole remaining relief sought—and, among other changes, attached certain new exhibits and eliminated several others.[3]  While Kaiser has failed to comply with the court's March 5, 2008, order, the court perceives no substantial reason to deny leave to file the complaint as presented.  *See* Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989) (noting that unless a substantial reason exists to deny leave to amend complaint, the district court's discretion is not broad

---

continues to reflect the original style, *i.e.,* "Kaiser v. Halley."  The clerk shall therefore be directed to change the docket at this time to make it consistent with the style of the case as it is shown in this Report and Recommendation.

[2] *See* Docs. 5, 6, 9, 10, 13, 16, and 19.  Title 28 U.S.C. § 1915A requires the court to review all complaints in which, as here, a prisoner seeks redress from an employee of a governmental entity.

[3] As Shipman speculates in his Amended Special Report, Kaiser may have deleted his demands for declaratory and injunctive relief in the belief they were rendered moot by his transfer to another institution, Graceville Correctional Facility.  *See* Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007) (noting that general rule in this circuit is that a prisoner's transfer to another facility will moot the prisoner's claims for injunctive and declaratory relief) (citing McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984)).

enough to permit denial).  The unauthorized alterations are minor, in terms of Shipman's ability to respond, and Shipman does not appear to object to them.  The court therefore grants Kaiser leave to file his most recent amended complaint as submitted, *nunc pro tunc*.  The Fourth Amended Complaint thus is the operative pleading in this action; accordingly, this Report and Recommendation relies on the allegations, demands for relief, and other information contained in that pleading and related documents.

In an order dated October 1, 2008 (Doc. 61), the court informed the parties that the Amended Special Report would be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56 and that Plaintiff's response would be treated as a response thereto.[4]  The court further advised the parties regarding the importance and ramifications of Rule 56 summary judgment consideration and provided them with information as to the requirements for materials submitted for summary judgment review. The parties were also given additional time in which to augment their Rule 56 submissions.  Shipman did not file any additional materials or argument within the time allotted, but Kaiser filed a supplement to his response (Doc. 63).

II.     BACKGROUND

In his Amended Special Report, now treated as a motion for summary judgment, Shipman presents a brief statement of facts (Doc. 53 at 4–7), much of which appears to be taken from the allegations of Kaiser's Fourth Amended Complaint.  In his response Kaiser agrees that, with one exception, Shipman's account of the facts is correct (Doc. 59 at 2).  Accordingly, other than as noted or as modified by the court to comport more closely with the evidence or allegations, the facts outlined below (which largely are derived from and cite to Shipman's Amended Special Report) appear to be without controversy.[5]

---

[4] In his response to the Amended Special Report Kaiser asserts that he is entitled to summary judgment in his favor.  In its October 1, 2008, order converting Shipman's Amended Special Report to a motion for summary judgment, the court did not recognize, and it has at no time treated, Kaiser's statement as a cross motion for summary judgment. As the order indicates, Kaiser's response has been considered solely as a response to Shipman's Amended Special Report.

[5] The court is obliged to construe liberally the allegations of a pro se litigant such as Kaiser and has done so here.  *See* Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (recognizing that pro se complaints should be held to "less stringent standards" than pleadings drafted by attorneys).  Therefore, in attempting to fairly present—and consider—Kaiser's claims the court has reviewed the allegations or statements in Kaiser's Fourth

From November 3, 2006, to November 27, 2007, Kaiser was an inmate at Century Correctional Institution ("CCI") and Shipman was the senior chaplain there.[6] Although Kaiser identifies himself as an eclectic pagan, he has been classified and is treated by the FDOC as a Wiccan.[7] Kaiser asserts that his faith involves goddess worship[8] and requires his use at night of tarot cards, a proper alter cloth,[9] and runes[10] (*see, generally,* Doc. 40 at 6–8). According to Kaiser, these devotional tools must kept in the practitioner's personal possession in order to preserve them in a consecrated condition (*see id.* at 7).

In March 2006 Kaiser inquired about CCI's procedure for inmates' receipt of tarot cards (*see* Doc. 53 at 4). The chaplain's office informed Kaiser that he could own tarot cards but that they would have to be stored and used in the chapel under the direct supervision of the chaplain (*id.*). In April 2006 Kaiser filed an informal grievance regarding the matter with Chaplain Williams, then the CCI senior chaplain, in which he asserted that being required to store his religious items in the chapel rather than being permitted to maintain them in his personal possession and use them when he chose violated his constitutional rights; Kaiser further complained that inmates at other FDOC institutions were permitted to have the items he was being denied (*id.*; Doc. 40 at 15). Chaplain Williams denied the grievance, explaining that Rule 33-602.201(16), Fla. Admin. Code, governed

---

Amended Complaint, his response to the Amended Special Report, and his supplemental response. Additionally, as required at summary judgment the court views the facts in the light most favorable to Kaiser, the nonmoving party, drawing those facts from the pleadings, affidavits, and other evidentiary materials on file. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

[6] Shipman's tenure as CCI senior chaplain encompassed the period from November 3, 2006, until June 24, 2008 (*see* Doc. 53 at 4); Kaiser was incarcerated at the facility from May 5, 2005, until November 27, 2007 (*see* Doc. 30-2).

[7] Kaiser's FDOC classification as a Wiccan is not at issue in this lawsuit.

[8] Wicca has been described as "a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity. Its practices include the use of herbal magic and benign witchcraft." O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400 (7th Cir. 2003) (internal quotation omitted).

[9] Kaiser submits that at CCI he was forced to use his wash cloth as an alter cloth for private devotionals because he was not permitted to possess the larger, separate piece of fabric that actually is needed (Doc. 63 at 1–2).

[10] Kaiser describes runes as sacred items based on a "magical [G]ermanic alphabet" that are used in combination with tarot cards to convey his needs and wants to his deity; according to Kaiser, runes are similar in form to the tiles used in the board game Scrabble (*see* Doc. 40 at 7–8; 10).

the restrictions on religious items. Under this Rule, Chaplain Williams stated, the chaplain and security personnel were required to determine whether the items presented a threat to the security and order of the institution. Chaplain Williams also noted that under other FDOC directives tarot cards were considered a Wiccan devotional item. Thus Kaiser would be permitted to have the cards, although they must be stored and used in the chapel (*id.*). Kaiser's formal grievance of the matter to the CCI warden and his appeal to the Office of the Secretary of the FDOC were denied (*id.* at 5). In January 2007 Kaiser filed an informal grievance in which he asserted that, in light of the guarantees afforded him by RLUIPA, his request to possess an alter cloth, tarot cards, and runes in his personal possession should be accommodated (*id.;* Doc. 40 at 21). This grievance was submitted to Shipman, who by then had replaced Chaplain Williams as the senior chaplain at CCI. Shipman informed Kaiser in his response to the grievance that while the religious items Kaiser requested might be authorized items of faith for Wiccans, the tarot cards must be stored in the chapel (*id.*). Shipman's decision was upheld on Kaiser's formal grievance of the issue and his appeal, the latter response noting that decisions as to where tarot cards were maintained were determined by security concerns; the Secretary also commented that other Wiccan inmates used their wash cloths as alter cloths and that runes were identified as a sacred religious item for Asatru/Odinist believers (*id.*; Doc. 40 at 22–25).

Kaiser arranged for a set of tarot cards to be mailed to him at CCI in January 2007; a second set was ordered in March 2007 (*see* Doc. 53 at 5–6). Institution officials returned the first set to the sender with the notation that the FDOC inmate number could not be identified; the precise fate of the second set is uncertain, but Kaiser states that he never received it (*id*). According to Kaiser, a former CCI mailroom worker—now identified as Lisa Costa Moye ("Moye")—told him in February 2007 that Shipman had informed her that inmates could not receive tarot cards and thus the cards should be refused (Doc. 59 at 2). Further, Kaiser asserts, Moye informed him in March 2006 that under FDOC regulations tarot cards were not approved property (*id.* at 2, 11). Shipman disputes Kaiser's first contention, pointing to Moye's declaration in which she denies that Shipman told her to return tarot cards for Kaiser or other inmates (Doc. 53-5 at 3). Moye's declaration also reflects that in a May 1, 2007, response to Kaiser's inquiry about his tarot cards she advised him that the mailroom had not received any such shipment (*id.* at 2; *see also* Doc. 40 at 28). Additionally,

Kaiser's March 2007 informal grievance, in which he complained that the mail room had twice rejected his tarot cards despite authorization from the assistant warden and the senior chaplain permitting the cards, was approved (*id.* at 31). The response reiterated, however, that the tarot cards must be used in the chapel.

The parties apparently agree that the relevant FDOC rule governing inmates' possession of religious items is Rule 33-602.201 (16)(f) 1-4 of the Florida Administrative Code. This rule provides:

> Inmate requests for other types of religious property shall be reviewed by the chaplain to determine whether the item is required by the inmate's particular religion. When items such as the tefillin or tarot cards are requested, a case-by-case evaluation shall be conducted by the chaplain and security personnel to determine whether the item presents a threat to security and order. In making the decision whether to allow the inmate to have the item in his possession, to allow the item to be stored in the chapel and used under supervision of the chaplain, or to deny the request for the item, staff shall consider the following factors:
>
> 1. The nature of the item requested and the particular dangers to security and order that the item presents;
>
> 2. The characteristics of the institution and of the general inmate population at the institution;
>
> 3. The custody level and record of the inmate requesting the item; and
>
> 4. Any other factors particular to the situation which impact on interests of security and order at that institution.

Rule 33-602.201 (16)(f) 1-4, Fla. Admin. Code.

Additionally, the <u>Florida Department of Corrections Religious Technical Guide</u> ("<u>RTG</u>") provides guidance with respect to permissible religious items for inmates; more specific to the instant case, the <u>RTG</u> excerpts submitted by Shipman discuss sacred texts, holy days, devotional items, dietary needs, etc., for Wiccan prisoners and followers of Asatru/Odinism (*see* Doc. 53 at 7; 53-6; 53-7). The <u>RTG</u> identifies tarot cards as an authorized devotional article for Wiccans but notes that the cards must be stored in the chapel and be readily available to the inmate for predetermined use (Doc. 53-6 at 2–3). The <u>RTG</u> also provides for the use of many other religious items, including alter cloths, for group worship by Wiccans under appropriate supervision (*id.*).

Runes are listed as permissible devotional items for Asatru/Odinism adherents and may be kept in the inmate's personal possession (Doc. 53-7 at 2).

III.     SUMMARY JUDGMENT STANDARD

On a motion for summary judgment pursuant to Fed. R. Civ. P. 56 the movant has the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986). If this burden is satisfied, the burden shifts to the nonmovant to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). The nonmovant must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); a "scintilla" of evidence is insufficient. The reviewing court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (quoting Celotex, 477 U.S. at 324). The nonmoving party need not produce evidence in a form that would be admissible at trial, as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c), other than the mere pleadings themselves. *Id.*

IV.     DISCUSSION

Kaiser alleges that denying him permission to possess tarot cards, runes, and a proper alter cloth or to have supervised access in the chapel at night to restricted items violated the Free Exercise Clause of the First Amendment and RLUIPA. Additionally, Kaiser alleges that permitting other CCI inmates and inmates at other FDOC institutions to possess secular items (playing cards and Scrabble tiles) and religious articles (Islamic prayer rugs) that were similar in nature to the items he was

denied violated the Equal Protection Clause of the Fourteenth Amendment.[11]  In his motion Shipman presents numerous arguments in support of his position that he is entitled to judgment in his favor on Kaiser's claims, and Kaiser has responded in opposition to many of these contentions.  The court addresses only those arguments needed to resolve Kaiser's claims and not necessarily in the order presented by the parties.

Eleventh Amendment Immunity

Kaiser sues Shipman in both his individual and official capacities (Doc. 40 at 12).  Shipman submits that Kaiser's constitutional claims for damages against him in his official capacity are barred by the Eleventh Amendment. Kaiser apparently does not disagree.[12] In any event, Shipman's statement of the law is correct.  As the Eleventh Circuit has noted, because "[a] state is liable for money judgments against officers who are sued in their official capacity," Schopler v. Bliss, 903 F.2d 1373, 1379 n.3 (11th Cir. 1990) (citing Brandon v. Holt, 469 U.S. 464, 471–72, 105 S. Ct. 873, 877–78, 83 L. Ed. 2d 878 (1985)), "such actions are in effect actions against the state, and thus are barred by the Eleventh Amendment." Id. (citing Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985), and Gamble v. Fla. Dept. of Health and Rehabilitative Services, 779 F.2d 1509, 1512–13 (11th Cir. 1986)).[13]  Thus the Eleventh Amendment bars Kaiser's constitutional claims for damages against Shipman in his official capacity.  These claims therefore may proceed against Shipman only in his individual capacity.

---

[11]  Shipman reads the Fourth Amended Complaint as alleging the violation of the First and Fourteenth Amendments with respect only to the possession of tarot cards and the violation of RLUIPA with respect to the possession of tarot cards, runes, and an alter cloth (Doc. 53 at 3).  Construing Kaiser's allegations liberally, as it must, see Haines, 404 U.S. at 520, and also relying on Kaiser's statement of claims as clearly presented in the Fourth Amended Complaint (Doc. 40 at 13), the court understands the claims to be as outlined above.

[12]  Kaiser's response conceding this issue is confusing, as it appears inconsistent with the position stated by Shipman with which Kaiser seemingly indicates he agrees (see Doc. 59 at 2 and Doc. 53 at 8, n.1).  In any event, the court assumes it is Kaiser's position that, as to his constitutional claims, he intends to sue Shipman in his individual capacity only.

[13]  Claims for injunctive and declaratory relief, while not proper against a defendant acting in his official capacity,  may be proper against a defendant acting in his official capacity.  See Powell v. Barrett, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007) (noting that while state defendants sued in their official capacity for monetary damages under § 1983 are immune from suit under the Eleventh Amendment, they are not immune from claims seeking prospective declaratory or injunctive relief). As noted previously, Kaiser has abandoned any claims for injunctive and declaratory relief.

With respect to Kaiser's RLUIPA claim, the Eleventh Circuit has held that this statute does not create a private cause of action for monetary damages against a defendant in his individual capacity. Smith v. Allen, 502 F.3d 1255, 1275 (11th Cir. 2007). The Smith court further indicated, however, that the Eleventh Amendment does not shield the state or its agents from an official capacity action for damages under RLUIPA. *Id.* at 1276, n.12. Accordingly, in light of Smith, Kaiser may assert a claim for damages under RLUIPA against Shipman, but only in Shipman's official capacity.

Exhaustion of Administrative Remedies

Shipman argues that Kaiser's First and Fourteenth Amendment claims must be dismissed because Kaiser failed to exhaust these claims administratively. Shipman points out that Kaiser's grievances and appeal concerning his constitutional claims name Chaplain Williams, not Shipman, who was not even assigned to CCI at the time Kaiser first complained about being prevented from possessing or using his devotional items. In his response Kaiser supplies copies of some of his grievances but does not directly address this argument.

Under 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Eleventh Circuit has noted that this section "entirely eliminates judicial discretion and instead mandates strict exhaustion, irrespective of the forms of relief sought and offered through administrative avenues." Johnson v. Meadows, 418 F.3d 1152, 1155 (11th Cir. 2005). In Florida, state prisoners must comply with a three-level administrative procedure in order to exhaust their grievances. This procedure includes filing an informal grievance, a formal grievance, and an appeal to the Office of the Secretary of the FDOC. *See* Rules 33-103.005 to 103.007, Fla. Admin. Code. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204–09, 127 S. Ct. 910, 914, 166 L. Ed. 2d 798 (2007).

In this case, the court is satisfied that Kaiser adequately followed the required grievance procedure regarding the possession and use of tarot cards, runes, and a proper alter cloth. In his

informal grievance dated April 12, 2006 (Doc. 40 at 15), Kaiser complained of being denied the possession and use of his religious items; this grievance was denied on the ground of security concerns. Kaiser filed a formal grievance to the warden of CCI and an appeal to the Secretary of the FDOC, both of which were denied. Kaiser filed another informal grievance in January 5, 2007, citing RLUIPA and again asking to be permitted to possess tarot cards, runes, and an alter cloth in his cell which, under the institution's procedures, he was being denied (Doc. 40 at 21). This informal grievance was also denied, again for security reasons. The CCI warden and the Secretary denied Kaiser's requests for review.

Kaiser's grievances were sufficient to alert prison officials to nature and scope of his demands and, if they saw fit, to provide relief. Simply because the issues raised by Kaiser in his grievances might form the basis of several different constitutional or statutory challenges or might rely on various legal theories does not alter the manner in which he was required to present his dispute to the FDOC. *See* Young v. McNeil, 2009 WL 2058923, *5 (N.D. Fla. 2009) (concluding that plaintiff had adequately grieved the issues presented in his claims even though his grievances addressed some, but not all, of the constitutional theories presented in his complaint). Shipman does not cite a regulation that requires an inmate to allege the elements of a legal claim or present the legal theory of his case, and the court is aware of none. The relevant FDOC regulation simply requires an inmate to file a written complaint "concerning an incident, procedure, or condition within an institution . . . ." Rule 33-103.002(7), Fla. Admin. Code. In short, the court is persuaded that Kaiser has satisfied section 1997e(a)'s exhaustion requirement with respect to his allegations that at CCI he was not permitted to keep—or use precisely as he desired—tarot cards, runes, and an alter cloth in his cell and that other inmates were allowed to possess secular and religious items similar in nature to the articles he was denied.

The Religious Land Use and Institutionalized Persons Act

Title 42 U.S.C. § 2000cc-1 provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

(1) is in furtherance of a compelling governmental interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

To succeed on a RLUIPA claim, a plaintiff must first present a *prima facie* case.  As the Eleventh Circuit has explained,

> To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened. [citations omitted].  The plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion." 42 U.S.C. § 2000cc-2(b). If the plaintiff succeeds in demonstrating a *prima facie* case, the government must then demonstrate that the challenged government action is "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b). In contrast, if the plaintiff fails to present evidence to support a *prima facie* case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling. *See* Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1228 (11th Cir. 2004).

Smith, 502 F.3d at 1276.

The Smith court noted that the term "substantial burden" has been defined as "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." Smith, 502 F.3d at 1277 (citing Midrash, 366 F.3d at 1227). "[T]he government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.' " *Id.* "That is, to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice." *Id.*

Shipman seeks dismissal of Kaiser's RLUIPA claim on the ground Kaiser cannot make out a *prima facie* case that being required to store and use his tarot cards under supervision in the chapel substantially burdened the exercise of his religion.  Additionally, as to Kaiser's allegation that he was also denied the use of runes in violation of RLUIPA, Shipman submits Kaiser did not attempt to obtain this item, much less was denied permission to do so or to possess them.  Shipman also contends that under the RTG, formal alter cloths are reserved for group worship but that Kaiser was

advised that other Wiccan inmates used their wash cloths for private services. Kaiser responds that refusing him permission to possess the religious items he desired at CCI was not the least restrictive means of furthering any compelling security interest at the institution, since other FDOC facilities did not impose the same restrictions that CCI did.

Runes and Alter Cloth. The court has located nothing in the record to support Kaiser's contention that runes and a special alter cloth are necessary for the practice of Wicca. *See* Gelford v. Frank, 310 Fed. Appx. 887, 888 (7th Cir. 2008) (affirming summary judgment on inmates' First Amendment and RLUIPA claims; inmates failed to come forward with evidence showing that prison's failure to provide them with runes and other requested divination tools imposed a substantial burden on their practice of Wicca). An inmate's "unreasoned say-so" is not enough to create a material issue of fact as to whether he was denied "something distinctly important for effective religious practice." *Id.* (citing Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006)). Even assuming, *arguendo*, that Kaiser could show these items were considered essential to the practice of his religion, the court concludes the evidence does not reflect that Kaiser was in fact denied permission to possess and use them. Runes were not mentioned in the response denying Kaiser's April 12, 2006, informal grievance (Doc. 40 at 15) or in the responses to the formal grievance and appeal (*id.* at 17, 19). Likewise, in his response to Kaiser's January 5, 2007, formal grievance Shipman made no mention of denying Kaiser permission to possess or use runes (*id.* at 21), although he did inform Kaiser about the restriction on possessing tarot cards; the response to the formal grievance is likewise silent (*id.* at 23). While the response to Kaiser's appeal mentions that runes are a sacred item for Asatru/Odinist followers (*id.* at 25), the response does not state that Kaiser could not possess runes. Indeed, Kaiser does not allege and has not shown that, unlike the tarot cards, he ever actively attempted to obtain or possess and use runes while at CCI. The court therefore concludes that Kaiser has not demonstrated that, with respect to any alleged inability to possess runes, he was substantially burdened in practicing his religion because he was not subjected to conduct that "significantly hamper[ed]" his religious practice. Smith, 502 F.3d at 1277. Nor was Kaiser forbidden from possessing an alter cloth. The undisputed evidence reflects that Kaiser was permitted to keep and use in his cell a wash cloth to serve as an alter cloth, an accommodation the Secretary indicated in his April 24, 2007, response that other Wiccan inmates employed. Kaiser

himself acknowledges that he substitutes other approved property items in conducting his religious devotionals, such using as a pencil for a wand and a canteen cup for a chalice (Doc. 40 at 8–9). While Kaiser may have desired a separate, larger piece of fabric to use as an alter cloth than the item that was available to him, the court concludes that he has not shown that being denied the cloth of his choosing caused him to be subjected to a deprivation that "significantly hamper[ed]" his religious practice.  Smith, 502 F.3d at 1277.  Therefore, as to his allegations that he was denied a proper alter cloth and the use of runes, Kaiser has fail to state a *prima facie* case of violation of RLUIPA because he has not shown that, with respect to either item, the practice of his religious beliefs was substantially burdened.

Tarot Cards.  Shipman also contends that denying Kaiser the personal possession and requested use of his tarot cards did not place a substantial burden on his religious practices.  Because Kaiser has come forward with no evidence on this issue other than his own "unreasoned say-so," Gelford, 310 Fed. Appx. at 888, the court agrees that Kaiser has not met his burden of showing that having to use his tarot cards in the chapel during the day under staff supervision constituted more than "an inconvenience on [his] religious exercise."  Smith, 502 F.3d at 1277.  Kaiser therefore has not shown that his religious practice was substantially burdened and thus has not presented a *prima facie* case with respect to this issue.

Alternatively, the court will assume, *arguendo*, that Kaiser has met the threshold requirement with respect to the tarot cards.  Other courts have accepted that a Wiccan inmate's being denied tarot cards may constitute a substantial burden on the exercise of his religion, *see, e.g.*, Singson v. Norris, 553 F.3d 660, 662 (8th Cir. 2009) (noting that sincerity of religious beliefs of Wiccan inmate who sought to possess tarot cards was not disputed ); Rouser v. White, 2009 WL 1393215, *17 (E.D. Cal. 2009) (same), and the evidence shows that Kaiser, who is classified by the FDOC as a Wiccan, sought permission to possess tarot cards at CCI but was denied. The court therefore will address whether Shipman has demonstrated that the restriction imposed at CCI on the possession of tarot cards constituted the least restrictive means of furthering a compelling governmental interest.

James Upchurch ("Upchurch"), the FDOC's Chief of Security Operations, states in an declaration supplied by Shipman that tarot cards include depictions of the Devil, the Hanged Man, and Death (Doc. 53-8).  According to Upchurch, there is great potential for the misuse of tarot cards

in prisons because inmates could associate the cards with Satan worshipers or witches casting spells. The inmate in possession of the cards might intimidate or manipulate other inmates or staff—creating security and safety concerns—or the inmate himself might be put at risk by his fellow prisoners.

The Supreme Court has observed that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and security," Cutter v. Wilkinson, 544 U.S. 709, 722, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005), and it is beyond question that prison safety and security constitute compelling government interests. *See* Harris v. Chapman, 97 F.3d 499, 504 (11th Cir. 1996). When enacting RLUIPA, Congress was "mindful of the urgency of discipline, order, safety, and security in penal institutions" and "anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with considerations of costs and limited resources." *Id.* at 723 (quotations and citation omitted). A prison is free to deny inmate religious requests predicated on RLUIPA if they "jeopardize the effective functioning of an institution." *Id.* Here, the court should defer to Upchurch's experience and expertise regarding the safety and security concerns underlying CCI's tarot card policy. Thus Upchurch's testimony is sufficient to satisfy Shipman's initial summary judgment burden of demonstrating an absence of evidence to support Kaiser's claim. Moreover, as Kaiser has failed to oppose this evidence, no genuine issue of fact exists. The court thus concludes that requiring Wiccan inmates to use their tarot cards during the day in the chapel furthers a compelling governmental interest.

Next, the court considers whether this restriction constitutes the least restrictive means of furthering the FDOC's compelling interest in security and safety. Upchurch states in his declaration that the only available alternative to permitting inmates to possess tarot cards personally is to require them to use the cards under staff supervision in the chapel. Access must be limited to daylight hours when administrative employees are present; at night, corrections staffing is far more limited. The risk of escape and the difficulties associated with a recapture also are significantly increased at night (Doc. 53-8). In response, Kaiser submits that CCI's policy is unnecessarily restrictive. Attempting to meet his summary judgment burden, Kaiser points to his own declaration and those of other

prisoners who attest that other FDOC facilities—including those with higher security ratings than CCI— permit inmates to keep tarot cards in their personal possession (*see* Doc. 40 at 44–46; Doc. 59 at 13–27).

Kaiser's declarations are technically deficient. *See* <u>Moon v.Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1989) (requiring pro se litigants to follow the same procedural rules as other litigants). Pursuant to 28 U.S.C. § 1746, the affidavit requirement of Rule 56(e) may be satisfied by an unsworn declaration submitted under penalty of perjury that includes a statement in substantially the following form:

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

> (Signature)

28 U.S.C. § 1746.

Most of the twenty declarations submitted by Kaiser[14] are adequately signed under penalty of perjury. None, however, contains the date on which the declarant executed the declaration. The declarations therefore are procedurally deficient and not appropriate for summary judgment review. *See* <u>Bonds V. Cox</u>, 20 F.3d 697, 702 (6th Cir. 1994) (stating that undated affidavits should be excluded from summary judgment consideration). Even if the declarations were procedurally sufficient, however, they have little evidentiary value due to their lack of specificity. The declarations provide few or no details regarding the particular circumstances in which inmates at other institutions may have been permitted to possess tarot cards, such as specific instances in which the declarant witnessed such conduct, where in the institution and when the conduct occurred, and who was involved. In any event, the court concludes that Kaiser has failed to rebut the evidence supplied by Upchurch. It therefore finds that CCI's policy of restricting inmates' use of tarot cards to the chapel during the day, as enforced by Shipman, constitutes the least restrictive means of furthering the FDOC's compelling interest in maintaining prison safety and security.

---

[14] Many of the declarations supplied in Kaiser's response to the Amended Special Report are near duplicates of those he submitted with the Fourth Amended Complaint, with the exception that the former contain some slight revisions or notations apparently made by Kaiser.

Case No. 3:07cv229/LAC/EMT

In summary, Kaiser has failed to present a *prima facie* case under § 3 of RLUIPA as to any of the devotional items he sought. Alternatively, with respect only to the issue of the personal possession of tarot cards, Kaiser has failed to rebut Shipman's evidence showing that CCI's tarot card policy constituted the least restrictive means of furthering the FDOC's compelling interest in maintaining prison safety and security. As Kaiser has not demonstrated that any genuine issues of material fact remain for trial, the court recommends that judgment be entered in Shipman's favor on Kaiser's RLUIPA claim.[15]

First Amendment

Shipman seeks dismissal of Kaiser's First Amendment claim on the ground Kaiser cannot demonstrate that Rule 33-602.201 (16)(f) 1-4's restrictions on the personal possession of property by inmates are not reasonably related to legitimate penological interests. Kaiser responds that the security concern cited for refusing to permit him to possess tarot cards at CCI was exaggerated, as other FDOC facilities do not impose the same restriction. Moreover, Kaiser contends, Shipman has failed to respond to his contention that he was not permitted to have runes or an alter cloth in his cell, which should result in judgment in Kaiser's favor.

The Eleventh Circuit has noted that "[i]f a prison's regulation passes muster under RLUIPA . . . it will perforce satisfy the requirements of the First Amendment, since RLUIPA offers greater protection to religious exercise than the First Amendment offers." Smith, 502 F.3d at 1264 n.5. As previously discussed, Kaiser has failed to present sufficient evidence to withstand summary judgment on his RLUIPA claim. Accordingly, it follows that judgment is also proper in Shipman's favor on Kaiser's First Amendment claim.

Although, for the reason just stated, the court need not address Kaiser's First Amendment claim further, it will do so briefly. Courts analyze free exercise challenges of prison regulations under a deferential standard, the reasonableness test articulated by the Supreme Court in Turner v. Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). A prison regulation that impinges on

---

[15] To the extent an issue of disputed fact may exist with respect to whether Shipman instructed Moye to refuse Kaiser's shipment of tarot cards or any other matters related to Moye, the issues are not material because, regardless of their disposition, they would not impact the court's relevant findings or affect the outcome of this case. Hickson Corp., 357 F.3d at 1259.

an inmate's constitutional rights should be upheld against constitutional challenges so long as the regulation is reasonably related to legitimate penological interests. <u>Turner</u>, 482 U.S. at 89. If the court finds a substantial burden on the exercise of religion, it should proceed to considering the four factors identified in <u>Turner</u> to determine if a prison regulation is reasonable: "(1) whether there is a 'valid, rational connection' between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns." <u>Pope v. Hightower</u>, 101 F.3d 1382, 1384 (11th Cir. 1996) (quoting <u>Turner</u>, 482 U.S. at 89–91).

To the extent Kaiser has not shown that he suffered a substantial burden on the exercise of his religion by being denied tarot cards, runes, or a particular alter cloth, his First Amendment claim, if considered apart from any RLUIPA claim, falters at this stage of the analysis. Nevertheless, proceeding to a consideration of the <u>Turner</u> factors, the court concludes that the alleged application of Rule 33-602.201 (16)(f) 1-4 at CCI was not unreasonable and thus that Kaiser did not suffer a violation of his First Amendment rights.[16]

Based on Upchurch's declaration, Shipman has shown a "valid, rational connection" between the requirement that Kaiser maintain and use tarot cards in the chapel, rather than in his personal possession, in maintaining the safety and security of CCI. Also, as it is undisputed that Kaiser was permitted to use the tarot cards to perform his devotional services in the chapel during daylight hours, an alternative means of exercising his religion remained open to Kaiser. Upchurch's declaration also suggests that permitting inmates to use tarot cards unsupervised or at night could be detrimental to the allocation of prison resources, given the concerns over the heightened risks involved and the consequent impact on staffing needs. Nor, as previously discussed, has Kaiser come forward with acceptable summary judgment evidence to rebut Upchurch's testimony indicating that the restrictions were not an exaggerated response to the institution's valid security

---

[16] Kaiser does not challenge the facial constitutionality of Rule 33-602.201 (16)(f) 1-4, Fla. Admin. Code, *per se*, but rather the manner of its application at CCI. The <u>Turner</u> analysis applies equally to "as applied" and facial challenges. <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 975 (9th Cir. 2004).

and safety concerns. Accordingly, the court concludes that Kaiser has not met his burden under Turner of rebutting the presumption of reasonableness attached to the application of Rule 33-602.201 (16)(f) 1-4., Fla. Admin. Code. *See* Harris v. I.K. Ostrout, Co., 65 F.3d 912, 916 (11th Cir. 1995).

For the reasons stated above, the court concludes that Kaiser has failed to demonstrate that any genuine issue of material fact remains for trial on his First Amendment claim. The court therefore recommends that summary judgment be granted in Shipman's favor.[17]

Fourteenth Amendment

Kaiser alleges other FDOC inmates, including some at CCI, were allowed to possess playing cards, Scrabble tiles, and Islamic prayer rugs while he was not permitted to have substantially similar items, specifically, tarot cards, runes, or the alter cloth of his choice. Shipman contends that Kaiser's allegations do not show that, either as a member of a protected religion or as an individual asserting a "class of one" claim, he was intentionally treated differently from others who were similarly situated to him. Kaiser responds, citing cases that involved both traditional equal protection claims

and "class of one" claims,[18] that his allegations are sufficient to show that similarly situated persons were treated disparately.

The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To establish an equal protection claim in the prison

---

[17] Shipman asserts his entitlement to qualified immunity with respect to Kaiser's First Amendment claim, arguing that even assuming a violation occurred, the law was not clearly established in this circuit that denying a practicing Wiccan the right to possess tarot cards personally violated the First Amendment. Because the court has determined that Kaiser suffered no constitutional violation, without further analysis it additionally concludes that Shipman is entitled to qualified immunity on Kaiser's First Amendment claim. *See* Case v. Eslinger, 555 F.3d 1317, 1328 (11th Cir. 2009) (noting that absent evidence that a constitutional violation occurred, the court need not consider whether the alleged violation was clearly established before granting qualified immunity).

[18] Kaiser cites Thigpen v. Bibb, 223 F.3d 1231 (11th Cir. 2002) (noting that "to properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately") (*abrogated on other grounds by* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)); and Racine Charter One, Inc. v. Racine Unified School District, 424 F.3d 677, 680 (7th Cir. 2005) (explaining that the "class of one" plaintiff must show that he and his comparators are similarly situated because they are "prima facie identical in all relevant respects or directly comparable . . . in all material respects.").

context, an inmate must allege that: "(1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest . . . ." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The plaintiff must also allege that the defendant acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E&T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir.1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987). The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but alleges that the plaintiff " 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. *Id.* at 1204–05. Although whether individuals are similarly situated is generally a factual question, "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." McDonald v. Village of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004) (citations omitted).

The court concludes that Shipman has met his initial summary judgment burden, both with respect to Kaiser's traditional equal protection claim that he was treated differently from Muslim inmates who were permitted to have prayer rugs similar to the alter cloth he was denied and his "class of one" claim that he was treated differently from other inmates who were permitted to possess tarot cards, runes, and a special alter cloth. The allegations of the Fourth Amended Complaint do not state or imply that Shipman acted with discriminatory intent to deprive Kaiser of

any of the religious items he desired, nor do Shipman's responses to Kaiser's grievances suggest any such motive.  As to both his traditional and his "class of one" claims, Kaiser therefore assumes the burden of coming forward with evidence demonstrating a genuine issue of material fact for trial.  <u>Celotex Corp.</u> 477 U.S. 317 at 322–23.  The court concludes that he has not done so.  As discussed above, the declarations Kaiser has submitted are not acceptable summary judgment evidence; even if they were, none of them address the issue of discriminatory intent, much less any discriminatory intent on Shipman's part.  The record demonstrates that a reasonable reading of Rule 33-602.201 (16)(f) 1-4, Fla. Admin. Code, and the <u>RTG</u>, by Shipman and others, was the basis for refusing to permit Kaiser to possess the tarot cards or use them when he desired; furthermore, Kaiser was not precluded from obtaining runes or engaging in private worship using a wash cloth as an alter cloth.  Shipman is therefore entitled to judgment in his favor on Kaiser's equal protection claim, simply on the ground that Kaiser has failed to show that Shipman acted with the intent to discriminate against him by refusing to permit him to keep certain religious items in his personal possession. *See* <u>Personnel Adm'r v. Feeney</u>, 442 U.S. 256, 272, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979) (holding that a plaintiff must demonstrate discriminatory intent to establish a § 1983 case based upon a violation of the Equal Protection Clause).  Moreover, with respect to inmates' ability to conduct private worship services, Kaiser has supplied nothing that shows Wiccan inmates who are required to use a wash cloth for an alter cloth are similarly situated to Muslim inmates who are permitted to use special prayer rugs.  Nor has Kaiser demonstrated that with respect to the possession of runes and tarot cards he is similarly situated to other FDOC inmates who are permitted to have Scrabble tiles and playing cards.  Runes and tarot cards, as Kaiser wishes to use them, are tokens of religious faith while Scrabble pieces and a deck of playing cards, as used by other FDOC inmates, clearly are secular items.  Based on the record evidence, the court concludes that no reasonable jury could conclude that Kaiser and the other FDOC inmates were similarly situated with respect to the use of these items.  <u>McDonald</u>, 371 F.3d at 1002.  For the foregoing reasons, the court therefore recommends that judgment be entered in Shipman's favor on Kaiser's equal protection claim.

V.      CONCLUSION

Kaiser has failed to demonstrate that any genuine issues of material fact remain for trial with respect to his claims under RLUIPA, the First Amendment, or the Fourteenth Amendment. Judgment should therefore be entered in Shipman's favor on each of these claims.

Accordingly, it is **ORDERED**:

1.      The clerk shall alter the docket to reflect that the style of this case is "David John Kaiser v. M. Shipman, Senior Chaplain," as shown in this Report and Recommendation

2.      Leave to file the Fourth Amended Complaint (Doc. 40) as presented is **GRANTED**, *nunc pro tunc*.

And it is respectfully **RECOMMENDED**:

1.      That Defendant M. Shipman's Amended Special Report, treated as a motion for summary judgment (Docs. 53, 62), be **GRANTED**.

2.      That judgment be entered in favor of Defendant.

At Pensacola, Florida this 4<u>th</u> day of August 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**